No. 2014-1086

# United States Court of Appeals
## FOR THE FEDERAL CIRCUIT

◆◆

ACTELION PHARMACEUTICALS, LTD.

*Plaintiff-Appellant*

v.

FOCARINO

*Defendant - Appellee*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA IN CASE NO. 1:10-CV-01145,
JUDGE RICHARD J. LEON

## PRINCIPAL BRIEF FOR PLAINTIFF-APPELLANT
## ACTELION PHARMACEUTICALS, LTD

THOMAS HOXIE, ESQUIRE
HOXIE & ASSOCIATES, LLC
75 Main Street, Suite 203
Millburn, NJ 07041
(973) 912-5232 (phone)
(973) 912-5236 (fax)
tom@hoxpat.com

*Attorney for Plaintiff-Appellant*

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____
_____
_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____
_____
_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____
_____
_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____
_____


_____             _____
         Date                              Signature of counsel

                                  _____
                                     Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

Table of Contents ……………………………………………………… i

Table of Authorities …………………………………………………….. iii

Statement of Related Cases ……………………………………………… 1

Jurisdictional Statement …………………………………………………   1

Statement of the Issues …..……………………………………………   2

Statement of the Case …………………………………………………   3

Statement of the Facts …………………………………………….... 4

Summary of the Argument …………………………………………...   8

Standard of Review ……………………………………………….. 10

Argument ……………………………………………………….. 12

I.  THE TERM OF A PATENT IS INSEPARABLE FROM THE
PATENT RIGHT, IT IS A CONSTITUTIONALLY PROTECTED
PROPERTY RIGHT, AND THE PTO HAS AN OBLIGATION TO
CORRECT ITS MISTAKES AND PROVIDE THE PATENT TERM
MANDATED BY CONGRESS. ………………………………………... 12

    *A.  Patents are constitutionally protected property* ……………………… 12

    *B.  The term of the patent is an integral aspect of the patent right* ……… 16

    *C.  The PTO has both the power and the obligation
to allow correction of its own errors at any time* ……………………….. 19

II.  THE INTERIM PROCEDURE AMOUNTS TO SUBSTANTIVE RULE-
MAKING, IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT
AND THE PTO'S AUTHORITY, BECAUSE IT TRUNCATES
SUBSTANTIVE RIGHTS.………………………………………………… 21

III.  THIS ACTION WAS TIMELY FILED …………………………… 25

*A.  The 180 day limit in 35 U.S.C. § 154(b)(4)(A) is not applicable to Actelion's challenge to the Interim Procedure* ................ 24

*B.  Assuming the 180 day limit in 35 U.S.C. § 154(b)(4)(A) were considered applicable to Actelion's challenge to the Interim Procedure, the limit should be equitably tolled* ..................... 28

Conclusion and Statement of Relief Sought ........................................ 30

# TABLE OF AUTHORITIES

## Federal Cases

*Actelion Pharmaceuticals Ltd., v. Kappos,*
     2013 U.S. Dist. LEXIS 135854 (D.D.C. 2013) …………………………… 1

*Animal Legal Defense Fund v. Quigg,*
     932 F.2d 920 (Fed. Cir. 1991) ………………………………………… 24

*Ark. Game & Fish Comm'n v. United States,*
     133 S. Ct. 511 (2012) ……………………………………………… 17, 19

*Bristol-Myers Squibb Co. v. Kappos,*
     841 F. Supp. 2d 238 (D.D.C. 2012) ……………………………………… 28

*Brown v. Duchesne,*
     60 U.S. 183 (1857) …………………………………………………….. 14

*Burns' Case*
     12 Wall. 246; 79 U.S. 246 (1871) ……………………………………... 14

*Cammeyer v. Newton*
     94 U.S. 225 (1877) …………………………………………………….. 14

*Chrysler Corp. v. Brown,*
     441 U.S. 281 (1979) …………………………………………………… 24

*Consolidated Fruit-Jar Co. v. Wright,*
     94 U.S. 92 (1877) ……………………………………………………… 14

*Daiichi Sankyo Co. v. Rea,*
     2013 U.S. Dist. LEXIS 169957 (D.D.C., 2013) …………………………... 29

*Donovan v. Red Star Marine Servs., Inc.,*
     739 F.2d 774 (2d Cir. 1984) …………………………………………… 23

*Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,*
     653 F.3d 1 (D.C. Cir. 2011) …………………………………………… 23

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ……………………………………………… 15

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
    527 U.S. 627 (1999) ……………………………………………… 15

*Greene v. Lindsey,*
    456 U.S. 444 (1982) ……………………………………………… 18

*James v. Campbell*,
    104 U.S. 356 (1882) ……………………………………………… 14

*James B. Beam Distilling Co. v. Georgia*,
    501 U.S. 529 (1991) ……………………………………………… 21

*Lewis-Mota v. Sec'y of Labor*,
    469 F.2d 478, 481–82 (2d Cir. 1972) …………………………………… 23

*McClurg v. Kingsland*
    1 How 202; 42 U.S. 202 (1843) ………………………………………  14

*Merck & Co., Inc. v. Kessler*,
    80 F.3d 1543 (Fed. Cir. 1996) ……………………………… 11, 23, 24

*Nat'l Fuel Gas Supply Corp. v. FERC*,
    59 F.3d 1281(D.C. Cir. 1995) ………………………………………… 20

*Novartis AG v. Kappos*,
    904 F. Supp. 2d 58 (D.D.C. 2012) ……………………………….. 28

*Novartis AG, et al. v. Focarino*,
    Fed. Cir. No. 13-1160, -1179 (pending) ………………………………… 29

*Pub. Employees Ret. Sys. of Ohio v. Betts*,
    492 U.S. 158 (1989) ……………………………………………… 11

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) …………………………………………….... 15

*Russell v. United States*,
  182 U.S. 516 (1901) ……………………………………………… 13

*Samuel McKeever v. The United States (McKeever's Case)*,
  14 Ct. Cl. 396 (1878) …………………………………………... 13

*Smith v. City of Jackson, Miss.*,
  544 U.S. 228 (2005) ……………………………………………… 11

*Sweet v. Sheahan*,
  235 F.3d 80 (2d Cir. 2000) …………………………………….. 23

*United States v. Buffalo Pitts Co.*,
  234 U.S. 228 (1914) ……………………………………………… 13

*United States v. Willow River Power Co.*,
  324 U.S. 409 (1945) …………………………………………… 18, 19

*Wyeth v. Kappos*,
  591 F.3d 1364 (Fed. Cir. 2010) ……………………………... *Passim*

*Zipes v. Trans World Airlines, Inc.*,
  455 U.S. 385 (1982) ……………………………………………… 29

## <u>Statutes</u>

5 U.S.C. §§ 551-559 ……………………………………………….. 21

5 U.S.C. §§ 701-706 ………………………………………………. 1, 21

5 U.S.C. § 706 …………………………………………………….... 11

28 U.S.C. § 1291 …………………………………………………..… 2

28 U.S.C. § 1295 …………………………………………………..… 2

28 U.S.C. § 1331 …………………………………………………..… 1

28 U.S.C. § 1338 …………………………………………………..… 1

28 U.S.C. § 1361 …………………………………………………………… 1

35 U.S.C. § 154 ………………………………………………..………… *Passim*

35 U.S.C. § 156 …………………………………………………………… 23

35 U.S.C. § 254 ……………………………………………..………… 8, 19

35 U.S.C. § 261 …………………………………………………………. 14

**Rules**

FED. R. CIV. P. 56(a) …………………………………………………... 10

**Regulations**

37 C.F.R. 1.705 ………………………………………………………… 20, 26

Federal Register, Vol. 75, No. 20, pp. 5043-5045, February 1, 2010 …………. 6, 7

**Constitutional Provisions**

U.S. Const. Amendment V. ………………………………………… *Passim*

U.S. Constitution Art. I, § 8 ……………………………………………. 12, 15

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the District Court below, or any other court, was previously before this or any other appellate court. Depending on the rationale of this Court's decisions, this case could affect or be affected by a decision in *Novartis AG, et al. v. Focarino,* Fed. Cir. No. 13-1160, -1179 (pending).

## JURISDICTIONAL STATEMENT

This is an appeal from a September 22, 2013 Order by the United States District Court for the District of Columbia, granting summary judgment against plaintiff-appellant Actelion Pharmaceuticals, Ltd. ("Actelion") and dismissing Actelion's claims for recalculation of patent term adjustment ("PTA") with respect to United States Patent No 7,094,781 and Actelion's challenge to the U.S. Patent and Trademark Office's interim procedure for recalculating patent term adjustment to comply with this Court's decision in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010).  A copy of the District Court's Order and Memorandum Opinion is attached hereto as Addendum 1.  A copy of the PTO's Interim Procedure is attached hereto as Addendum 2.

The District Court had jurisdiction over the case below pursuant to 28 U.S.C. §§ 1331, 1338(a) & 1361; 35 U.S.C. § 154(b)(4)(A); and 5 U.S.C. §§ 701-706 because the action arose under the Patent Act, 35 U.S.C. § 1, et seq., and

because Actelion suffered legal wrong and was adversely affected and aggrieved by action of the U.S. Patent and Trademark Office ("PTO").

This Court has jurisdiction over this appeal, timely filed November 6, 2013, pursuant to 28 U.S.C. §§ 1291 & 1295(a)(1) and (a)(4)(C), in that it is an appeal from a final judgment disposing of all parties' claims before the District Court regarding rights secured by the Patent Act.

## STATEMENT OF THE ISSUES

A.) Whether the District Court erred in determining that the term of a patent is not a constitutionally protected property right subject to the guarantees of the Fifth Amendment of the Constitution and the protections accorded substantive rights under the Administrative Procedures Act.

B.) Whether the District Court erred in concluding that the PTO's Interim Procedure was "procedural" for purposes of the Administrative Procedure Act and within the PTO's scope of authority, although it conflicted with the Patent Act and adjudicated substantive rights, truncating the term of Actelion's patent, denying Actelion the ability to enforce its substantive patent rights for the full statutory period, and adversely affecting the value of the patent.

C.) Whether the District Court erred in concluding that this action was time-barred, although it was filed promptly after the issuance of the Interim

Procedure, and although the PTO, as a matter of official policy, has

expressly barred any procedure to correct PTA under the *Wyeth* rationale

with respect to patents such as Actelion's.

## STATEMENT OF THE CASE

This is an appeal from the United States District Court for the District of

Columbia, which granted summary judgment in favor of the USPTO and against

Actelion, denying Actelion's challenge to the Interim Procedure and request for

correction of the term of its patent. See, *Actelion Pharmaceuticals Ltd., v. Kappos,*

2013 U.S. Dist. LEXIS 135854 (D.D.C. 2013); A98; Add. 1. There is no dispute

that the PTO made a mistake in calculating the term of Actelion's patent and that

there has never been at any time a procedure within the PTO to allow for

correction of this error.  The District Court, however, incorrectly determined that

the term of the '781 Patent is not a significant or constitutionally protected

property right and that the PTO's Interim Procedure, which allowed retroactive

correction of PTA for some patents under *Wyeth,* but blocked correction of PTA in

this case, was nevertheless "procedural" and within the scope of the PTO's

authority. See, A90-97; Add. 1.  The District Court further concluded that

Actelion's action was time-barred under the provisions of 35 U.S.C. § 154(b),

notwithstanding that the claims challenging the fairness and validity of the Interim

Procedure under the Fifth Amendment and the Administrative Procedures Act

were not brought as an appeal under 35 U.S.C. § 154(b), but rather were in

response to the promulgation of the Interim Procedure, and notwithstanding that, as

a matter of official policy, the PTO does not and never has permitted any

administrative process whatsoever for correction of PTA in accordance with *Wyeth*

on patents granted more than 180 days prior to the Interim Procedure.

## STATEMENT OF THE FACTS

Actelion is a relatively small pharmaceutical company and is the sole owner

and assignee of U.S. Patent 7,094,781 ('781 Patent) (A23), entitled "Sulfamides

and Their Use as Endothelin Receptor Antagonists," which issued from U.S. Patent

Application 10/433,041 on August 22, 2006. A22.  The '781 Patent received a

patent term adjustment ("PTA") of 312 days. See, A24-25.

The procedures for determining such a "patent term adjustment" ("PTA") are

governed by § 154(b). Several types of delay can figure into calculating the overall

PTA, two of which are relevant to this case. First, so-called "A Delay" accrues if

USPTO fails to take certain specified actions within certain time periods, such as

failing to respond to a patent application within 14 months of its filing. See §

154(b)(1)(A). Second, "B Delay" accrues if USPTO fails to issue a patent within

three years of the filing of the application. See § 154(b)(1)(B). After determining

the proper amounts of A and B Delay, USPTO determines the extent of any

overlap between the two types of delay to arrive at the overall PTA. See §

154(b)(2)(A). The PTA is then reduced by any periods of delay attributable to the applicant. See § 154(b)(2)(C).

The PTA of 312 days accorded to the '781 Patent equates to the period of A Delay of 319 days, reduced by a period of applicant delay of 7 days. A24. No patent term adjustment was granted for the 87 day period of B Delay. *Id.* The PTO's calculation was carried out by software programmed in accordance with the PTO's interpretation of 35 U.S.C. §154(b). See, e.g., A41.

In *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010), this Court held that the PTO's method of computing PTA under 35 U.S.C. §154(b), which had been systematically applied to all patents issued during approximately ten years from enactment of the current PTA provisions until that point, was incorrect. Prior to the *Wyeth* decision, USPTO interpreted the "period of delay" for B Delay to include the entire time between the filing of an application and the issuance of a patent more than three years later. If the USPTO took longer than three years to issue a patent, therefore, any A Delay that occurred during the pendency of the application necessarily overlapped with the period of B Delay, and was not credited to the patentee's total PTA. USPTO used either the greater of the A Delay or B Delay to determine the appropriate adjustment, but did not combine the two. See, *Wyeth*, 591 F.3d at 1368. In *Wyeth*, the Federal Circuit found USPTO's interpretation of the overlap provision to be wrong, and held that A Delay and B Delay should be

aggregated, so long as that aggregation would not require counting the same calendar day twice. See *id.* at 1369-70.

Under the *Wyeth* calculation, the correct patent term adjustment for the '781 Patent would be 361 days ((A Delay: 319 + B Delay: 87) – (Overlap A Delay days that occur after 3 year pendency: 38) - (applicant delay: 7) = 361 days). A10. The PTO does not dispute this calculation or that the PTA accorded to the '781 patent was thus 49 days less than the PTA provided under 35 U.S.C. §154(b) as interpreted in *Wyeth.* See, e.g., A17.

Within a month of the Federal Circuit's decision in *Wyeth*, the PTO took steps to comply with the decision. A41; Addendum 2.  It began to reconfigure the software to provide a correct calculation, and it issued "Interim Procedure for Patentees to Request a Recalculation of the Patent Term Adjustment to Comply with the Federal Circuit Decision in *Wyeth v. Kappos* Regarding the Overlapping Delay Provisions of 35 U.S.C. 154(b)(2)(A)", as a means for addressing for correction of PTA as required by *Wyeth* with respect to patents issuing before the software change could be implemented. *Id.*  The Interim Procedure was published in the Federal Register, Vol. 75, No. 20, pp. 5043-5045, February 1, 2010, effective forthwith, without any prior public notice or opportunity for public comment. A41-43; Add. 2.

The Interim Procedure, however, was not available for all patents for which

PTA had been erroneously calculated. Id.  Rather, the Interim Procedure explicitly required that any request for recalculation of PTA in view of *Wyeth* had to be filed within 180 days of issuance of the patent:

> In order to qualify, a form requesting a recalculation of the patent term adjustment must be submitted no later than 180 days after the patent has issued. . . . .
>
> The USPTO will deny as untimely any request for recalculation of patent term adjustment indicated on a patent that is not filed within 180 days of the day the patent was granted.

Federal Register, Vol. 75, No. 20, pp. 5043-5044, February 1, 2010. See, A41-42; Add. 2.

The effect of this limitation is that, for patents granted more than 180 days prior to the Interim Procedure, there is no possibility for correction of PTA in accordance with *Wyeth.*  The Interim Procedure provides no explanation or rationale for this 180-day cutoff, which gives *Wyeth* partial retroactive effect for patents granted after the 180-day cutoff, but precludes any possibility for correction of any older patents such as the '781 patent. See, A41-43; Add. 2.

On July 6, 2010, within 180 days of the *Wyeth* decision and the promulgation of the Interim Procedure, but more than 180 days after the issuance of the patent, Actelion filed suit challenging the Interim Procedure and seeking correction of its patent in accordance with *Wyeth.* A13.

## SUMMARY OF THE ARGUMENT

This case involves an undisputed error by the United States Patent and Trademark Office ("the PTO") in computing the patent term for many patents, including Actelion's patent, and a challenge to an arbitrary, unfair and ineffective procedure created by the PTO without notice or comment, to correct errors of this type.

The District Court erred in finding "no legal support for the proposition that a patent *term* is a constitutionally protected property interest" (Opinion, p. 4, fn 5); (A90), and further finding that the Interim Procedure for adjusting patent term was a procedural rule, not a substantive rule, which did not require notice and comment under the Administrative Procedures Act (Opinion, p. 12, fn 9); (A97).  The Court also found that the Interim Procedure could not be challenged under the APA because it held that an appeal to District Court under 35 U.S.C. § 154(b) provides the sole remedy for challenging the rules relating to patent term adjustment calculations, and that such an appeal was time-barred. A97; Addendum 1.

Patents are constitutionally protected property rights. A patent is inseparable from its term, and each day of patent term has value, particularly when (as in this case) the patent covers a commercial product.  The District Court trivialized this constitutionally protected property right, and deferred to the PTO in finding that the PTO was not required to provide any effective means of correction of errors in

patent term.

Prior to the decision in *Wyeth*, the PTO systematically miscalculated PTA on patents. There was no possibility under the PTO's pre-*Wyeth* rules to challenge and correct these errors, although the PTO has the authority to correct its own errors in patents at any time. 35 U.S.C. §254. The 180 day limitation on court actions filed by patentees under 35 U.S.C. § 154(b)(4)(A) has nothing to do with procedures within the PTO and no bearing on the PTO's authority and obligation to correct its own mistakes. The PTO's failure and refusal to correct, or provide any administrative means for correcting, its own systematic errors in calculating PTA with respect to older patents such as the '781 patent, is arbitrary and capricious, and frustrates the purpose of 35 U.S.C. § 154(b), which was and is that the PTO should regularly and appropriately implement the patent term adjustments as set forth therein.

The arbitrary 180-day cutoff in the Interim Procedure effectively terminates constitutionally protected property rights. The PTO's decision to apply *Wyeth* to some patents, but to exclude older patents such as Actelion's patent from the Interim Procedure, amounted to a taking without due process or compensation. The PTO effectively terminated substantive rights with this rule, thus exceeding its procedural rulemaking authority under the Patent Act, and violating the Administrative Procedures Act ("APA").

This action was filed promptly after the issuance of the Interim Procedure, and obviously an action to challenge the Interim Procedure could not have been made before the Interim Procedure existed. Actelion's claims are thus timely filed and not subject to the limitations period for appeals of PTO action under 35 U.S.C. § 154(b).

Moreover, even if this Court allows the PTO to maintain the 180 day cutoff in the Interim Procedure, the period to file a court action under 35 U.S.C. § 154(b)(4)(A) should have been equitably tolled, solely with respect to requests for recalculation of PTA under the *Wyeth* standard, at least until the date of PTO's acceptance of the correct interpretation of the statute and adoption of the Interim Procedure.  Prior to that point, there was never any process consistent with PTO rules to seek correction, and the PTO's arbitrary exclusion for correction of older patents under the Interim Procedure is the trigger for this lawsuit.

Because there is no factual dispute regarding the dates at issue, and the calculation of the correct PTA under the *Wyeth* decision is straightforward, this Court should reverse the summary judgment of the District Court and order the PTO to adjust the PTA determination for the '781 Patent to 361 days.

### STANDARD OF REVIEW

This Court reviews a grant of summary judgment by a district court without deference. *Wyeth,* 591 F.3d at 1369. Summary judgment is appropriate if the

Court determines that there "is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). Because there are no genuine disputes of material fact in this case, this Court need only decide the questions of law determined by the District Court.

As this Court has previously determined, the PTO does not have the authority to issue substantive rules, only procedural regulations regarding the conduct of proceedings before the agency. See *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549 (Fed. Cir. 1996). Moreover, 35 U.S.C. § 154(b)(3)(A) explicitly limits the PTO's authority with respect to PTA determinations to prescribing "regulations establishing procedures for the application for and determination of patent term adjustments." 35 U.S.C. § 154(b)(3)(A).

In considering the validity and adequacy of the Interim Procedure, which allows for correction of patent term for some patents but not for others, the PTO's determination is not entitled to any special deference. The language of the PTA statute itself, as interpreted by this Court's prior decision in *Wyeth,* establishes the period of patent term in this case. *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010), citing *Smith v. City of Jackson, Miss*., 544 U.S. 228, 267 (2005) (*quoting Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989)) ("Of course, it is elementary that `no deference is due to agency interpretations at odds with the plain language of the statute itself.'"). The scope of review of the PTO's action in

promulgating the Interim Procedure is broad, pursuant to 5 U.S.C. 706, which provides, e.g., that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."

## ARGUMENT

## I.  THE TERM OF A PATENT IS INSEPARABLE FROM THE PATENT RIGHT, IT IS A CONSTITUTIONALLY PROTECTED PROPERTY RIGHT, AND THE PTO HAS AN OBLIGATION TO CORRECT EVIDENT MISTAKES AND PROVIDE THE PATENT TERM MANDATED BY CONGRESS

### A.  *Patents are constitutionally protected property*

Patents are constitutionally protected property.  Actions like the Interim Procedure – implemented without notice or comment or hearing – which substantially impair this property right may not be implemented without due process.  Given the long history establishing that patents are constitutionally protected property, this may seem an obvious point.  Yet the District Court expressly held that a patent term is not a constitutionally protected interest and that the Interim Procedure, which barred any recourse for PTA correction in the case of Actelion's patent, was merely procedural and did not affect any substantive right.  See, A90, A97.  This was a fundamental error.

While under English law, patent rights (like land) were viewed as a grant

12

from the crown, in this country they were specially recognized in the Constitution

(Art. I, § 8) as being a natural right of the inventor, arising from the act of

invention, not from any government grant.  In an 1878 decision affirmed by the

Supreme Court, the Court of Claims provided a detailed history of the American

recognition of patents as fundamental and constitutionally protected property

rights, and contrasts it with the traditional English view that patents were a grant

from the king:

> In this country, on the contrary, our organic law recognizes in the clearest terms that mind-work which we term inventions. What immediate reasons operated upon the framers of the Constitution seem to be unknown, but it is plain that they had a clear apprehension of the English law, on the one hand, and a just conception, on the other, of what one of the commentators on the Constitution has termed "a natural right to the fruits of mental labor." Instead of placing our patent system upon the English foundation of executive favor and conferring that prerogative of the Crown upon the President, they transferred all authority to the legislative department of the government (the department which regulates rights), by placing it among the specially enumerated powers of Congress.

*Samuel McKeever v. The United States (McKeever's Case)*, 14 Ct. Cl. 396 (1878),

affirmed without written decision by the Supreme Court; *see*, *Russell v. United

States*, 182 U.S. 516, 531 (1901)(citing *McKeever* as "affirmed on appeal by this

court"); *United States v. Buffalo Pitts Co.*, 234 U.S. 228, 233 (1914) (citing

*McKeever* as "affirmed by this court"). The *McKeever* Court went on to point out

that, despite the use in the statute of terms carried over from English law, the

Constitution itself speaks of "securing" an "exclusive right" to an inventor, not of

"granting" a "patent", emphasizing that such rights did not depend on Congress or the Executive for their creation. *McKeever,* 14 Ct. Cl. 396, 421-422. The Court then reviewed the relevant Supreme Court cases in support of this view:

> The decisions of the judiciary, so far as they have gone, also seem to be in harmony with the action of the other departments of the government. In *McClurg v. Kingsland (1 How., 202)*, the Supreme Court held that the repeal of a patent law could have "no effect to impair the right of property then existing in a patentee," and that "a patent must, therefore, stand as if the acts [repealed] remained in force." In *Burns' Case (12 Wall., 246)* it was held that the inventor's license to the government to use his patented invention was a valid consideration to support an action on an express contract for the royalty. In *Cammeyer v. Newton (94 U.S., 225)*, in delivering the opinion of the court, Mr. Justice Clifford says, "The rule of law is well settled that an invention so secured is property in the holder of the patent; and that as such the right of the holder is as much entitled to protection as any other property, during the term for which the franchise or the exclusive right or privilege is granted."

*McKeever*, 14 Ct. Cl. at 422-423. As the Supreme Court confirmed a few years later in *James v. Campbell*, 104 U.S. 356, 358 (1882), "The government of the United States, as well as the citizen, is subject to the Constitution, and when it grants a patent the grantee is entitled to it as a matter of right, and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor."

This traditional view of patents as fundamental property rights is reflected in 35 U.S.C. § 261 which provides that "[P]atents shall have the attributes of personal property."  The Supreme Court has more recently confirmed that patents are constitutionally protected property rights:

14

> Patents . . . have long been considered a species of property. See *Brown v. Duchesne, 60 U.S. 183, 19 HOW 183, 197, 15 L. Ed. 595 (1857)* ("For, by the laws of the United States, the rights of a party under a patent are his private property"); cf., *Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 96, 24 L. Ed. 68 (1877)* ("A patent for an invention is as much property as a patent for land"). As such, they are surely included within the "property" of which no person may be deprived by a State without due process of law. And if the Due Process Clause protects patents, we know of no reason why Congress might not legislate against their deprivation without due process under §5 of the Fourteenth Amendment.

*Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 642 (1999). *See, also*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002)(a patent "is a property right" and patent rights constitute "the legitimate expectations of inventors in their property").

In *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003-04 (1984), the Court recognized the inherent natural rights of innovators, in holding that even where the originator's data are not the subject of any patents, but are instead kept as trade secrets, such data may be "cognizable as trade-secret property rights", constitutionally protected from taking without due process by the Fifth Amendment. This holding underscores that an innovator's intellectual property rights do not originate in the first instance from the Patent Act or any executive action, but rather are fundamental and constitutionally protected property interests.

Thus, the American position, from the 1789 to the present, has been that an invention is a species of property protected by federal law but created by the

inventor.  While Congress is obligated under Art. I, § 8, of the Constitution, to secure for limited times to the inventor the exclusive right to such inventions, this underlying property right arises from the act of invention.  Patents are thus constitutionally protected property rights, perfected and secured by federal law, but inherently arising through innovation.

**B.  *The term of the patent is an integral aspect of the patent right***

In holding that there is "no legal support for the proposition that a patent *term* is a constitutionally protected property interest" (Opinion, p. 4, fn. 5, emphasis in the original) (A90), the District Court appeared possibly to be distinguishing between the patent right *per se*, and the *term* of the patent. It is, however, difficult to conceptualize a patent without a term. A patent, like a leasehold or an estate for term of years, is a property right defined in part by its term, and thus taking of the patent term amounts to a taking of the patent.

The specific term of a patent is established by Congress, not by the PTO, and it has a significant value, particularly in the case of pharmaceuticals, where patents are relied upon to secure returns for the huge upfront investments in research and clinical trials.  The PTO's restriction of that term, in contravention of the Patent Act and this Court's decision in *Wyeth,* constitutes a significant taking of a Constitutionally protected interest.

The patent which is the subject of this case covers a recently approved

commercial pharmaceutical, Opsumit® (macitentan), for treating pulmonary hypertension.  Some independent analysts project peak annual sales for this product will exceed $1.4 billion, meaning that 49 days would correspond to over $180 million in sales.  If there were to be generic competition during that period, those sales would of course be substantially lower.  Thus, even relatively small changes in patent term may have a huge financial impact for the patentee.  Expectations and projections regarding patent term are fundamental to securing investment.

Truncation of patent term, even for a relatively short period, thus has a significant impact on "reasonable investment-backed expectations".  In *Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511 (2012), the Supreme Court reversed a decision of this Court to hold that temporary flooding not amounting to permanent or complete deprivation of property could nevertheless be a taking of property within the meaning of the Fifth Amendment.  The determination as to whether a taking occurred was based in part on consideration of the owner's "reasonable investment-backed expectations" regarding the land's use.  The Supreme Court, however, flatly rejected any suggestion that because the flooding was only *temporary*, affecting the use of the property for a time, but not underlying ownership of the property *per se*, it would for that reason fall outside of the property interest protected by the Constitution.

The consequence for Actelion of the PTO's implementation of the Interim Procedure is that it will not receive the full patent term mandated by Congress. Instead, 49 days before that term is up, its patent will be extinguished. The reduction in patent term can be compared to an early eviction by a landlord, depriving the tenant of the exclusive right to his leasehold.  In *Greene v. Lindsey,* 456 U.S. 444 (1982), the Supreme Court held that a leasehold was a significant property interest, such that eviction from public housing required due process under the Fourteenth Amendment, notwithstanding that only the *term* of the leasehold was affected and the tenant had already enjoyed the benefits of the leasehold up to the point of eviction.

Fundamentally, the *term* of a patent is inseparable from the patent right. Were patent term considered not to be a substantive property interest, the PTO could (as a matter of procedure and administrative convenience) arbitrarily deprive a patent holder of all but a single day of patent term, yet still not trigger a regulatory taking under the Due Process clause or any remedy under the Administrative Procedures Act.  There is no limiting principle to the PTO's position in this case.

In support of its holding below that there is "no legal support for the proposition that the patent *term* is a constitutionally protected property interest," the District Court relied on *United States v. Willow River Power Co.,* 324 U.S. 409

(1945) for the proposition that the threshold inquiry for a Fifth Amendment taking

claim is whether the interest is a property right. See, A90.  That case involved a

claim by a power company for damage to the output of its hydroelectric plant

resulting from an upstream federal dam that lowered the water level of the river.

The Supreme Court found that under the facts of that case, there was no cognizable

property interest in the partial reduction of water flow.  This is in sharp contrast to

the instant case, where there is a clearly defined property interest, the specific

parameters of which were identified by this Court in *Wyeth,* and where the

property interest is not merely diminished, but destroyed upon the premature

expiry of the patent.  Moreover, the district court's suggestion that the temporal

aspect of the taking somehow automatically removed it from the purview of the

Fifth Amendment is entirely inconsistent with the Supreme Court's decision in

*Ark. Game & Fish Comm'n*, discussed above.

Accordingly, Actelion respectfully submits that *Willow River Power* does

not control this case, and that contrary to the District Court's Opinion, the patent

term is indeed a constitutionally protected property interest.

## *C.  The PTO has both the power and the obligation to allow correction of its own errors at any time*

The PTO is obliged to grant patents in accordance with the Patent Act.  The

Patent Act gives the PTO the authority to correct its own errors in patents at any

time, without a fee, and on its own initiative.  35 U.S.C. §254 provides:

Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents.

The PTO's error in calculating PTA for Actelion's patent is "clearly disclosed" by the PTO records. See, e.g., A24-25. Although the Interim Procedure bars correction of the PTA's miscalculation with respect to this patent, the PTO clearly has the *authority* to make such a correction at any time. The 180-day limitation on *court actions* filed by patentees under 35 U.S.C. §154(b)(4)(A) has no bearing on the PTO's authority to correct its own mistakes.

The Interim Procedure, which bypasses the procedures of 37 C.F.R. 1.705 and allows for retroactive correction of PTA in accordance with *Wyeth* in some cases (A41-42), while arbitrarily excluding correction of older patents, violates basic principles of jurisprudence. *Wyeth* did not create a new rule.  Rather, the PTO's calculation of PTA had been incorrect from the outset, and the decision was intended to require the PTO to implement the statute as it always should have been implemented. This Court held that the PTO's pre-*Wyeth* interpretation was flatly inconsistent with the statute, and retroactively applied its own interpretation to correct the PTA for Wyeth's patent. The Supreme Court has made it clear that it is "error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *James B. Beam Distilling Co. v.*

*Georgia*, 501 U.S. 529, 540 (1991).  The partial retroactivity of the PTO's implementation of *Wyeth* under the Interim Procedure "violates the principle of treating similarly situated parties the same." *Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995).

The categorical exclusion for correction of older patents under the Interim Procedure, by imposing an arbitrary 180-day-from-grant limitation on correction, a limitation not to be found in 35 U.S.C. § 154(b) and in contravention of this Court's decision in *Wyeth*, is arbitrary and outside the scope of the PTO's authority.  Because the Interim Procedure effectively cuts off congressionally mandated term from existing patents such as Actelion's, it amounts to a taking, without due process or just compensation, in violation of the Fifth Amendment.

## II.  THE INTERIM PROCEDURE AMOUNTS TO SUBSTANTIVE RULE-MAKING, IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT AND THE PTO'S AUTHORITY, BECAUSE IT TRUNCATES SUBSTANTIVE RIGHTS

The Administrative Procedure Act (APA) governs internal procedures of administrative agencies, including how they interact with the public. The APA is codified at 5 U.S.C. §§ 551-559, and civil actions for violations of the APA are permitted under 5 U.S.C. §§701-706.   The APA governs both agency rulemaking and agency adjudication of substantive rights.

The District Court found that the APA's notice-and-comment requirements were not applicable to the Interim Procedure, because it held the Interim Procedure to be "procedural". Opinion, p. 12, fn 9; A97.   This was also an error.

First, whether the Interim Procedure is viewed as "procedural" or "substantive", the Interim Procedure is *ultra vires* because it is inconsistent with determination of PTA under 35 U.S.C. § 154(b), and is thus outside the scope of the PTO's authority.  Not only does it prevent correction of older patents in accordance with that statute as interpreted by this Court in *Wyeth,* but it establishes a 180-day-from-grant cutoff which is nowhere authorized by the statute.   It was implemented without notice or comment and provides no explanation or rationale for this cutoff. See, e.g., A41-43.

Second, the Interim Procedure does not merely alter the procedure with respect to older patents; it precludes any procedure at all.  And prior to the Interim Procedure, such patents were not eligible for correction either, as the earlier PTO rules, procedures and software for calculation of PTA did not admit or allow calculation under the method adopted in *Wyeth.* See e.g., A41. Thus the PTO never at any time has provided a process for correct implementation of PTA as required by statute.

Patent term is a substantive right, and the effective elimination of patent term for an entire arbitrarily determined category amounts to a blanket adjudication

of that substantive right, without any of the procedural safeguards required under the APA.

The fact that the Interim Procedure is labeled a "Procedure" does not mean it is not substantive.  In determining whether an agency has promulgated a substantive or a procedural rule, "the label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact." *Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478, 481–82 (2d Cir. 1972). Substantive rules "create new law, rights, or duties, in what amounts to a legislative act." *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir. 2000) (internal quotation marks omitted); see *Donovan v. Red Star Marine Servs., Inc.*, 739 F.2d 774, 783 (2d Cir. 1984) (stating that substantive rules "change existing rights and obligations" (internal quotation marks omitted)). A procedural rule, by contrast, "does not itself alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d at 5 (internal quotation marks omitted).  Here, Actelion's rights to patent term were unquestionably altered, and the 180-day cutoff (why not 100 days? or 300 days?) was plainly a legislative determination.

This Court has previously held PTO rules setting patent term to be substantive and thus outside of the PTO's jurisdiction.  In *Merck & Co. v. Kessler,*

80 F.3d 1543 (Fed. Cir. 1996), this Court had occasion to consider another ruling of the PTO regarding a transitional situation affecting the term of a pharmaceutical patent. The issue was whether a "Hatch-Waxman" patent term extension under 35 U.S.C. §156 could be added to a term adjustment under the transitional provisions of 35 U.S.C. §154, which extended the terms of then existing patent filings to the longer of 17 years from issue or 20 years from first US filing, or whether the patent term extension should be measured from the original expiry of the patent.

This Court found that the determination of the patent term was a substantive determination, and because the PTO had no substantive rule making authority, the determination was not entitled to *Chevron* deference and could not be considered to have "the force and effect of law":

> [T]he broadest of the PTO's rulemaking powers-- 35 U.S.C. § 6(a)-- authorizes the Commissioner to promulgate regulations directed only to "the conduct of proceedings in the [PTO]"; it does not grant the Commissioner the authority to issue substantive rules. *Animal Legal Defense Fund v. Quigg,* 932 F.2d 920, 930, 18 U.S.P.Q.2D (BNA) 1677, 1686 (Fed. Cir. 1991). Because Congress has not vested the Commissioner with any general substantive rulemaking power, the "Final Determination" at issue in this case cannot possibly have the "force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 60 L. Ed. 2d 208, 99 S. Ct. 1705 (1979) ("The exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes.").

*Merck,* 80 F.3d at 1549-1550.

As the PTO has no authority to make generally applicable rules affecting substantive rights, the Interim Procedure, which allows for correction of PTA in some cases and bars it in others, was a clear violation of the APA.

## III.  THIS ACTION WAS TIMELY FILED

### A.  The 180 day limit in 35 U.S.C. § 154(b)(4)(A) is not applicable to Actelion's challenge to the Interim Procedure

The District Court held that any and all claims for PTA correction, whether arising under the Patent Act, the APA or the Constitution, are governed by the time limits of 35 U.S.C. § 154(b)(4)(A), providing that

> An applicant dissatisfied with a determination made by the Director under paragraph (3) shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.

The District Court's interpretation of this limitation to govern all cases relating to PTA is much broader than the plain language of the statute.  35 U.S.C. § 154(b)(4)(A) is specifically limited to challenges to "a determination made by the Director under paragraph (3)".  The Interim Procedure is not such a determination, and the time limits under 35 U.S.C. § 154(b)(4)(A) are not applicable to Actelion's suit challenging the Interim Procedure.  The Interim Procedure is a separate, independent rule made by the PTO, completely outside of the framework of the PTO's normal rules for raising challenges to patent term, implicitly made pursuant to the PTO's general (and non-time-limited) authority to provide for correction of

PTO error.  It bypasses  37 C.F.R. 1.705, which is the regulation for PTA

reconsideration under 35 U.S.C. §154(b) and which requires that a request for

reconsideration of the patent term adjustment indicated in the patent must be filed

within an inextensible two months from the patent's issue date.

The Interim Procedure addresses a special situation, to make a particular

type of correction, which is not directly addressed or contemplated by any of the

procedures in 35 U.S.C. §154(b).  It is not and does not purport to be a

"determination" for purposes of the time limits of 35 U.S.C. § 154(b)(4)(A). See,

A41-43.  Moreover, it is undisputed that the PTO, as a matter of official policy,

actively blocked and opposed any effort at correction under the *Wyeth* rationale up

until the *Wyeth* decision issued, frustrating any meaningful avenue for correction

within the PTO prior to that point, and that under the Interim Procedure, it

continues to maintain this policy for older patents.  This is not a case where 37

C.F.R. 1.705 would otherwise provide an effective avenue for correction – for

example where there is some dispute about the facts, where the patentee is arguing

about whether a delay is attributable to the applicant or where the PTO made a

math error. If the PTO believed the procedure of 37 C.F.R. 1.705 to be adequate or

appropriate for such a case, there would have been no need for the Interim

Procedure.

The PTO below made the odd argument that each and every affected

patentee could and should have done as Wyeth did – violated the PTO's rules, followed up with a lawsuit, as Wyeth did, within 180 days of grant, and taken an appeal to this Court. That is to say, the PTO considers that compliance with the PTO's rules should result in forfeiture of constitutionally protected and Congressionally mandated rights to patent term, while violation of its rules preserves those rights. Requiring each and every affected party to violate the PTO's rules seems an unworkable, inefficient and unfair standard, however. A better approach would be simply to require the PTO to implement the law with respect to *all* patentees, not just those, like Wyeth, which have the financial ability to engage in extraordinary and extra-agency procedures. This is in fact what the APA requires: that due process – that is, notice and comment for rules such as the Interim Procedure that establish or eliminate substantive rights or notice and hearing for adjudications – be provided *at the agency level*, not merely through appeal to the courts. While an avenue for appeal to the courts is one element of the process the APA requires, it is not the only element, and the right of appeal does not by itself establish that the agency action comported with due process.

The injury to Actelion is ongoing. Actelion's patent is still in force. A22. The loss of PTA is an existing and active deprivation of Actelion's constitutionally protected right to patent protection for the full period authorized by Congress, and the present value of the patent right is reduced accordingly. Equity, as well as the

APA, requires a right of action to secure this constitutionally protected property.

**B.  Assuming the 180 day limit in 35 U.S.C. § 154(b)(4)(A) were considered applicable to Actelion's challenge to the Interim Procedure, the limit should be equitably tolled**

If this Court determines that the period to file a court action under 35 U.S.C. § 154(b)(4)(A) is applicable to this case, it should be equitably tolled, solely with respect to requests for recalculation of PTA under the *Wyeth* standard, at least for the period until the date of PTO's acceptance of the correct interpretation of the statute and adoption of the Interim Procedure. Tolling the limitations period and allowing this case to proceed would vindicate the Congressional intent of 35 U.S.C. § 154(b) to provide the full measure of PTA to parties such as the Plaintiff, rather than to allow the PTO to evade correction of past errors.  It is not equitable to penalize patent holders for delay in seeking correction during a period when efforts at correction would have been futile, or at least very burdensome and expensive, because the PTO was misinterpreting the statute and imposing that misinterpretation on applicants as a matter of policy.  Moreover, the *Wyeth* decision coupled with the implementation of the Interim Procedure constituted a clear change in circumstances.  It was not possible to challenge the Interim Procedure before the Interim Procedure existed.

The District Court below held that 35 U.S.C. § 154(b)(4)(A) was jurisdictional, and so deprived the Court of subject matter with respect to any

issues relating to patent term adjustment. Opinion at p. 7; A96. This broad reading of the statute is not justified. The issue has not been addressed by this Court, but the district courts which have considered the issue have generally held that this provision is **not** jurisdictional and should be narrowly read. See, e.g., *Bristol-Myers Squibb Co. v. Kappos*, 841 F. Supp. 2d 238 (D.D.C. 2012)(applying equitable tolling while request for reconsideration pending before PTO); *Novartis AG v. Kappos*, 904 F. Supp. 2d 58, 67 (D.D.C. 2012)(finding time limit not jurisdictional but declining to apply equitable tolling; NB: *Novartis* is pending on appeal to this Court as *Novartis AG, et al. v. Focarino, No. 13-1160, -1179*). Quite recently, the District Court for the District of Columbia provided a fairly extensive analysis of this issue and held that this time limit was not jurisdictional:

> Thus, the USPTO has not shown that § 154(b)(4)(A) "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). Because courts should be hesitant to find that a rule is jurisdictional, see *Gonzalez*, 132 S. Ct. at 648, and the USPTO has not shown that § 154(b)(4)(A) contains jurisdictional language, **the court holds that the provision is not jurisdictional.** *Cf. Novartis*, 904 F. Supp. 2d at 67 (finding that "it is perhaps more prudent to conclude that § 154(b)(4)(A) should be viewed as a 'claim-processing rule'" "[i]n light of . . . recent admonishments to construe the meaning of 'jurisdictional' narrowly"). Because § 154(b)(4)(A) is not jurisdictional, there is a rebuttable presumption that it is subject to equitable tolling.

*Daiichi Sankyo Co. v. Rea*, 2013 U.S. Dist. LEXIS 169957 (D.D.C. Dec. 3, 2013)(emphasis added; equitable tolling not available under the facts of that case).

Thus, assuming for the sake of argument that Actelion's challenge to the

Interim Procedure were subject to 35 U.S.C. § 154(b)(4)(A), the presumption in favor of equitable tolling would apply, and this Court would have jurisdiction to decide this issue, as suit was filed within 180 days of both the *Wyeth* decision and the Interim Procedure.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

Because there is no factual dispute regarding the dates at issue, and the calculation of the correct PTA under the *Wyeth* decision is straightforward, no additional proceedings below are necessary. This Court should reverse the summary judgment of the District Court, order the PTO to adjust the PTA determination for the '781 Patent to 361 days, and/or order the PTO to modify the Interim Procedure to permit correction of all affected patents in accordance with *Wyeth*.

Respectfully submitted,

Dated: January 13, 2014

     /s/ Thomas Hoxie
Thomas Hoxie, Esq.
Hoxie and Associates LLC
75 Main St., Ste. 203
Millburn, NJ. 07041
Telephone: (973) 912 5232
Fax: (973) 912 5236
Email: tom@hoxpat.com

Attorney for Plaintiff-Appelant,
Actelion Pharmaceuticals, Ltd.

ADDENDUM 1

District Court's Order and Memorandum Opinion

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ACTELION PHARMACEUTICALS LTD.,  )
                                  )
        **Plaintiff,**          )
                                  )
        **v.**              )     **Civil Case No. 10-01145 (RJL)**
                                  )
HON. DAVID J. KAPPOS,        )
                                  )
        **Defendant.**     )

## FILED

SEP 2 3 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## ORDER
September 22, 2013 [## 9, 10]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [# 9] is **DENIED**; it is

further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment [# 10] is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint is dismissed.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ACTELION PHARMACEUTICALS LTD.,  )
                                      )

     **Plaintiff,**                   )
                                        )

          **v.**                       )     **Civil Case No. 10-01145 (RJL)**
                                        )

HON. DAVID J. KAPPOS,          )
                                        )

     **Defendant.**              )

**FILED**

**SEP 2 3 2013**

## MEMORANDUM OPINION
September **22** 2013 [## 9, 10]

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Actelion Pharmaceuticals Ltd. ("Actelion" or "plaintiff") brought this suit against defendant David J. Kappos in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO"). Plaintiff claims that USPTO improperly determined the amount of patent term adjustment to which it is entitled. Before the Court are plaintiff's Motion for Summary Judgment and defendant's Cross-Motion for Summary Judgment. Upon consideration of the pleadings, record, and relevant law, plaintiff's motion is DENIED and defendant's motion is GRANTED.

## BACKGROUND

Patents are issued by USPTO for a term ending 20 years from the date the patent application was filed, as opposed to the date the patent is issued. 35 U.S.C. § 154(a)(2). As a result, delays by USPTO in examining a patent application can reduce the effective term of that patent. *See Wyeth v. Kappos*, 591 F.3d 1364, 1366 (Fed. Cir. 2010). To

address this issue, Congress provided that a patent term will be extended to account for certain delays. *See id.*; 35 U.S.C. § 154(b).

The procedures for determining such a "patent term adjustment" ("PTA") are governed by § 154(b)(3). Several types of delay can figure into calculating the overall PTA, two of which are relevant for plaintiff in this case. First, so-called "A Delay" days accrue if USPTO fails to take certain specified actions within certain time periods, such as failing to respond to a patent application within 14 months of its filing. *See* § 154(b)(1)(A). Second, "B Delay" days accrue if USPTO fails to issue a patent within three years of the filing of the application. *See* § 154(b)(1)(B). After determining the proper amounts of A and B Delay, USPTO determines the extent of any overlap between the two types of delay to arrive at the overall PTA. *See* § 154(b)(2)(A).

USPTO makes an initial PTA determination prior to patent issue and includes it with the written "notice of allowance" informing an applicant that he is entitled to a patent. *See* 35 U.S.C. § 154(b)(3)(B)(i); 37 C.F.R. § 1.705(a) (2006). The applicant must pay an issue fee within three months; once payment occurs, USPTO issues the patent and determines the final PTA as of the date of the patent grant, noting this determination on the face of the patent. *See* 35 U.S.C. § 151; 37 C.F.R. § 1.705(d) (2006). If the applicant disagrees with the PTA, the statute entitles him to "one opportunity to request reconsideration of any [PTA] determination made by the Director." 35 U.S.C. § 154(b)(3)(B)(ii).

Further, the statute permits the applicant to appeal USPTO's PTA determination to a federal district court. Specifically, the statutory provision, entitled "Appeal of patent term adjustment determination," provides:

> An applicant dissatisfied with a determination made by the Director under paragraph (3) [Procedures for patent term adjustment determination] shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent. Chapter 7 of title 5 [5 U.S.C. §§ 701-706] shall apply to such action . . .

§ 154(b)(4)(A) (2010).[1]

On January 7, 2010, in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010), the Federal Circuit rejected USPTO's method for determining A and B Delay overlap, finding that USPTO had relied on an erroneous interpretation of 35 U.S.C. § 154(b).[2] Following the *Wyeth* decision, USPTO changed its method for making future PTA determinations to align with the court's holding. In addition, USPTO created an "Interim Procedure," effective February 1, 2010, that permitted patentees to request a PTA recalculation from USPTO so long as their patent was issued prior to March 2, 2010 *and* their request for recalculation was filed within 180 days of the patent grant. *See* Interim Procedure, 75 Fed. Reg. 5043, 5043 (Feb. 1, 2010). Thus, in effect, only patents granted

---

[1] Effective September 16, 2011, the U.S. District Court for the Eastern District of Virginia now has jurisdiction for civil actions brought under this statute. *See* Pub. L. 112-29 at § 9(a), 125 Stat. 284, 316.

[2] Prior to the *Wyeth* decision, USPTO interpreted the "period of delay" for B Delay to include the entire time between the filing of an application and the issuance of a patent more than three years later. If USPTO took longer than three years to issue a patent, therefore, any A Delay that occurred during the pendency of the application necessarily overlapped with the period of B Delay, and was not credited to the patentee's total PTA. Under this rubric, USPTO used either the greater of the A Delay or B Delay to determine the appropriate adjustment, but did not combine the two. *Wyeth*, 591 F.3d at 1368. In *Wyeth*, the Federal Circuit found USPTO's interpretation of the overlap provision to be erroneous, and held that A Delay and B Delay should be aggregated so long as that aggregation would not require counting the same calendar day twice. *See id.* at 1369-70.

within the 180 days prior to February 1, 2010, were eligible for a PTA recalculation using the new post-*Wyeth* interpretation of A and B Delay overlap.

The material facts are not in dispute in the instant case. Plaintiff, a pharmaceutical company, holds U.S. Patent No. 7,094,781 (the "'781 Patent"). Compl. [Dkt. # 1] ¶¶ 3, 9. The application for the '781 Patent was filed on May 27, 2003. *Id.* ¶ 8. USPTO issued the '781 patent on August 22, 2006, with a PTA of 312 days using its pre-*Wyeth* method of calculating A and B Delay overlap. *Id.* ¶ 11; Pl.'s Mot. Summ. J. and Mem. Supp. [Dkt. # 9] ("Pl.'s Mot.") at 4. Plaintiff never filed a request for reconsideration of its PTA with USPTO. Def.'s Cross-Mot. Summ. J. and Mem. Supp. [Dkt. # 10] ("Def.'s Mot.") at 2. And Plaintiff filed this civil action on July 6, 2010—more than 180 days after the August 22, 2006 patent grant. *See* Compl.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court will accept as true the evidence of the non-moving party, and draw "all justifiable inferences" in his favor. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986) (citation omitted). A genuine dispute about a material fact only exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

4

## ANALYSIS

Plaintiff moves for summary judgment, seeking a recalculation of its PTA based on the post-*Wyeth* methodology for computing A and B Delay overlap.[3] Plaintiff attempts to achieve this result by bringing three claims. First, plaintiff claims USPTO improperly calculated its PTA and directly appeals that calculation under 35 U.S.C. § 154(b)(4)(A). Compl. ¶¶ 18-24; Pl.'s Mot. at 11-13. Next, plaintiff argues USPTO's implementation of its post-*Wyeth* methodology and its failure to provide plaintiff the remedy of recalculating its PTA under that new methodology violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Compl. ¶¶ 25-28; Pl.'s Mot. at 13-15. Lastly, plaintiff argues USPTO's failure to correct its PTA was a "taking" of property without due process or just compensation in violation of the Fifth Amendment of the Constitution. Compl. ¶¶ 29-30; Pl.'s Mot. at 16-18. Defendant cross-moves for summary judgment, arguing that plaintiff's appeal under that statute is untimely, and that its APA and "taking" arguments are meritless.[4] *See generally* Def.'s Mot. Because all material facts in this case are undisputed, and for the reasons discussed below, summary judgment in favor of defendant is appropriate.

---

[3] Plaintiff asserts that such a recalculation would increase its PTA from 312 days to 361 days. Compl. ¶ 1.

[4] I agree with defendant that plaintiff's "taking" argument is meritless, and thus summarily dispose of it here, because plaintiff has proffered no legal support for the proposition that a patent *term* is a constitutionally protected property interest. *See, e.g., United States v. Willow River Power Co.*, 324 U.S. 499, 503 (1945) (threshold inquiry for Fifth Amendment taking claim is whether the interest is a property right).

## I.    Statutory Claim

Challenges to USPTO's determination of a PTA are governed by 35 U.S.C. § 154(b)(4)(A), which specifically provides that such appeals must be filed with this District Court *"within 180 days after the grant of the patent."* § 154(b)(4)(A) (emphasis added). Plaintiff filed the instant action on July 6, 2010, well over 180 days—in fact, *nearly four years*—after the '781 Patent was granted on August 22, 2006. The plain language of the applicable statute therefore renders plaintiff's complaint untimely. The only question, then, is whether the 180-day filing deadline should not apply to plaintiff for some reason.

Plaintiff argues that the time limit in § 154(b)(4)(A) is not jurisdictional and is instead a "claim-processing rule," and therefore it should be equitably tolled to allow plaintiff's suit due to the change in the law effectuated by *Wyeth*. *See* Pl.'s Mot. at 11-13; *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (non-jurisdictional statutes of limitation may be equitably tolled). Defendant counters that § 154(b)(4)(A)'s time limit is jurisdictional and thus bars plaintiff's claim because jurisdictional filing deadlines are not susceptible to equitable tolling. *See* Def.'s Mot. at 5-10; *Dolan v. United States*, 130 S. Ct. 2533, 2538 (2010) (court may not extend a jurisdictional deadline for equitable reasons). In the alternative, defendant argues that, even if the time limit is non-jurisdictional, plaintiff does not warrant the extraordinary remedy of equitable tolling. *See* Def.'s Mot at 10-16.

Thus, as an initial matter, this Court must decide whether the statute is jurisdictional. *See Henderson ex. rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202

6

(2011) ("federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press"); *Obaydullah v. Obama*, 688 F.3d 784, 788 (D.C. Cir. 2012). For the following reasons, I find that the 180-day time limit for seeking judicial review is, in fact, jurisdictional, and because plaintiff filed suit after that deadline, plaintiff's statutory claim under § 154(b)(4)(A) is untimely and this Court lacks subject matter jurisdiction to hear it.

For threshold requirements to bringing suit, such as the time limit at issue here, the Supreme Court has drawn a distinction between "jurisdictional" rules and "claim-processing rules." A jurisdictional rule is one that "governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson*, 131 S. Ct. at 1202; *see also Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). By contrast, non-jurisdictional "claim-processing rules" are "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 131 S. Ct. at 1203.

The distinction between jurisdictional conditions and claim-processing rules is, most unfortunately, less clear than this simple formulation might suggest.[5] In order to

---

[5] "While perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice. Courts—including [the Supreme Court]—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010). As a result of "profligate" use of the term "jurisdictional" by courts, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006), the Supreme Court has endeavored to narrow the meaning of "jurisdictional" in an attempt to "bring some discipline to the use of this term." *Henderson*, 131 S. Ct. at 1202; *see Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). In particular, the Supreme Court has focused the relevant inquiry on Congress' intent and emphasized that rules should be presumed to be non-jurisdictional absent a clear intent otherwise.

determine whether a given rule is jurisdictional, therefore, a court must look to Congress' intent. *See id.* at 1203 (the court must "look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional'").[6] In turn, to ascertain Congress' intent, a court must examine the "'condition's text, context, and relevant historical treatment.'" *Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1328 (D.C. Cir. 2012) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)); *see also Henderson*, 131 S. Ct. at 1204-06 (examining text of the time limit provision, its placement within the statute, and "the singular characteristics of the review scheme that Congress created" to ascertain Congress' intent). In the absence of such a clear intent, a court should presume that a rule is *not* jurisdictional. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006); *Reed Elsevier, Inc.*, 559 U.S. at 161; *Henderson*, 131 S. Ct. at 1202.

In the instant case, the Court's inquiry starts and ends with the text of the statutory provision because its language clearly indicates Congress' intent for the 180-day time limit to be jurisdictional. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (rule is jurisdictional if Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional" (quoting *Arbaugh*, 546 U.S. at 515)); *see also Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) (if Congress "clearly stated" the limitation is jurisdictional, "our inquiry is over"). Section 154(b)(4)(A) places jurisdiction in a particular forum—the U.S. District Court for the District of Columbia—for review of particular claims—appeals of USPTO PTA

---

[6]    In *Henderson*—in the specific context of statutory time limits for review of administrative agency decisions—the Supreme Court expressly disclaimed applying "a categorical rule regarding review of administrative decisions." *Henderson*, 131 S. Ct. at 1204. Instead, the Court reiterated that ascertaining Congress' intent is the relevant inquiry.

determinations filed *within 180 days of the patent grant*. The statute thus "speak[s] in jurisdictional terms," *Arbaugh*, 546 U.S. at 515, because it defines and limits the subject matter jurisdiction of this particular District Court: Congress clearly identified not only *which court* could hear these claims, but *when*. *See Bowles v. Russell*, 551 U.S. 205, 210-13 (2007) (holding statute-based time limit in 28 U.S.C. § 2107(c) is jurisdictional and stating, "[b]ecause Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts hear them"). There can be no doubt that if plaintiff had filed its claim in a different federal District Court, that court would have had no difficulty in concluding it lacked subject matter jurisdiction. Similarly, there is no reason why the 180-day time limit—which is part of the same and only statutory grant of jurisdiction—should be construed any differently by this Court as non-jurisdictional. Because the statutory provision both confers jurisdiction on this Court and identifies the point at which that jurisdiction ends, Congress' jurisdictional grant to this Court is inextricably tied to that time limit. *See United States v. McGaughy*, 670 F.3d 1149, 1157-58 (10th Cir. 2012) (finding time limit set forth in Fed. R. Crim. P. 35 to be jurisdictional because the Rule is incorporated by reference in 18 U.S.C. § 3582(c), the statute granting courts authority to correct sentencing errors, and thus the time limit "is an integral part of the statutory grant of authority"); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (holding Title VII provision specifying time limit for filing charges with Equal Employment Opportunity Commission ("EEOC") is not jurisdictional, in part because "it does not speak in jurisdictional terms *or refer in any way to the jurisdiction of the district courts*" (emphasis added)). Indeed, this Court would not otherwise have

9

jurisdiction over a § 154(b)(4)(A) claim without the very statutory grant that contains the time limit. *Cf. Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004) (holding statute-based time restriction is *not* jurisdictional because "[it] relates only to postjudgment proceedings auxiliary to cases *already within* that court's adjudicatory authority" (emphasis added)).

Moreover, a review of § 154(b)(4)(A)'s context—namely, its structure and the placement of the time limit clause—further bolsters my conclusion that the time limit is jurisdictional. The 180-day time limit is located not only in the *same section* of the statute, but also in the *same provision* and the *same sentence* as the clause placing jurisdiction in this Court. This placement clearly evinces Congress' intent that the time limit be jurisdictional. *Cf. Zipes*, 455 U.S at 393-94 (holding Title VII provision specifying time limit for filing charges with EEOC is not jurisdictional, in part because it "appears as an entirely *separate provision* [from the Title VII jurisdiction provision located in the same section of the statute]," while conversely, "[t]he provision granting district courts jurisdiction . . . does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC" (emphasis added)); *Arbaugh*, 546 U.S. at 515-16 (holding employee numerosity requirement for bringing Title VII action is not jurisdictional, in part because it is located in a separate provision in a *separate section* of the statute from Title VII's jurisdiction-granting provision); *Reed Elsevier, Inc.*, 559 U.S. at 163-65 (holding statute requiring litigant to register his copyright claim before bringing an infringement action is not jurisdictional, in part because the requirement is located in a separate provision in a *different statute* from the applicable jurisdiction-granting statutes).

10

And while "[m]ere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle," *Gonzalez*, 132 S. Ct. at 651, here the 180-day time limit is not simply proximal to the jurisdiction-granting provision, it is an integral part of the sentence itself.

Finally, as for relevant historical treatment, the Court is not aware of, nor have the parties located, any precedent construing § 154(b)(4)(A).[7] In the absence of prior treatment of the particular provision, the Supreme Court's "'interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional.'" *Gonzalez*, 132 S. Ct. at 648 n.3 (quoting *Reed Elsevier, Inc.*, 559 U.S. at 168 (2010)). Here, defendant argues that § 154(b)(4)(A) is structurally similar to the statutes held to be jurisdictional in *Gonzalez v. Thaler* and *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008). *See* Def.'s Mot. at 8-9; Def.'s Reply to Pl.'s Opp'n [Dkt. # 14] at 3-4. But the Court need not turn to comparing statutes to decipher Congress' intent in this case because the text of § 154(b)(4)(A) clearly indicates that Congress meant for the 180-day time limit to be jurisdictional.[8] It really is that simple! Accordingly, defendant's motion must be, and is, GRANTED.[9]

---

[7] Plaintiff argues that my colleague on this Court, Judge Sullivan, recently held that § 154(b)(4)(A) is not jurisdictional and is subject to equitable tolling. Pl.'s Mot. at 11. But plaintiff is mistaken. In *Bristol-Myers Squibb Co. v. Kappos*, 841 F. Supp. 2d 238 (D.D.C. 2012), the court held the statute was subject to *general* tolling where the plaintiff had filed a timely request for reconsideration with USPTO. The court did *not* reach the question of whether the statute was jurisdictional, nor did it address equitable tolling. Further, to the extent Actelion's pleadings could be construed as arguing that general tolling should apply, it is clear that argument fails. Under general tolling principles, a request for administrative reconsideration renders an agency's action non-final and thus tolls any time limit for seeking judicial review of that agency action. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002). Since Actelion never sought administrative reconsideration, general tolling does not apply in this case.

[8] In reaching this decision, the Court is mindful of the nuances and complexities of the case law addressing the legal character of threshold requirements. Threshold *time limits*, in particular, have

## CONCLUSION

Thus, for the foregoing reasons, the Court DENIES plaintiff's Motion for Summary Judgment and GRANTS defendant's Cross-Motion for Summary Judgment. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

elicited divergent treatment from courts. *Compare Bowles v. Russell*, 551 U.S. 205, 210-13 (2007) (holding 28 U.S.C. § 2107(c)'s time limit for filing appeal is jurisdictional, and highlighting the Supreme Court's "longstanding treatment of statutory time limits for taking an appeal as jurisdictional") *and United States v. McGaughy*, 670 F.3d 1149, 1156 (10th Cir. 2012) ("[until *Gonzalez v. Thaler*,] *Bowles* seemed to provide clear guidance to the lower courts—statutory time limits are jurisdictional, non-statutory time limits are not") *with Henderson*, 131 S. Ct. at 1203 (stating "[f]iling deadlines, such as the [statute-based] 120-day filing deadline at issue here, are quintessential claim-processing rules" and rejecting the idea that *Bowles* held "categorically that every deadline for seeking judicial review in civil litigation is jurisdictional") *and Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 523 (D.C. Cir. 2010) ("Filing deadlines, statutory or not, are generally nonjurisdictional"). Nonetheless, as I have explained, Congress' intent is sufficiently clear from the text of § 154(b)(4)(A) to resolve the question here. *See Henderson*, 131 S. Ct. at 1203 ("Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule").

[9]     Plaintiff also argues that USPTO's implementation of *Wyeth*—its Interim Procedure for PTA determinations that did not apply *Wyeth* retroactively to all patents—violated the APA because it (1) was arbitrary and capricious, and (2) was not promulgated via notice-and-comment rulemaking pursuant to 5 U.S.C. § 553. *See* Pl.'s Mot. at 13-15. Neither argument is persuasive. First, plaintiff is foreclosed from using an APA claim to circumvent § 154(b)(4)(A)'s 180-day time limit to attain a PTA recalculation. "The APA provides for a limited waiver of sovereign immunity for '[a] person suffering legal wrong because of agency action . . . [h]owever, a plaintiff may not rely on this waiver 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Fraternal Order of Police v. Gates*, 562 F. Supp. 2d 7, 11 (D.D.C. 2008) (citing 5 U.S.C. § 702). Here, a statute—35 U.S.C. § 154(b)(4)(A)—expressly waives sovereign immunity for appeals of PTA determinations and makes them reviewable under the APA's judicial review provisions, 5 U.S.C. §§ 701-706. Therefore, plaintiff may not attempt an end-run around that statute's time limit by seeking redress under the APA generally. *See id.*; 5 U.S.C. § 704 (permitting judicial review only for "[a]gency action made reviewable by statute *and* final agency action for which there is *no other* adequate remedy" (emphasis added)). Second, USPTO was not required to use notice-and-comment rulemaking to devise the Interim Procedure because it is a procedural rule, not a substantive rule. *See* 5 U.S.C. § 553(b)(A); *Chamber of Commerce of the United States v. United States Dep't of Labor*, 174 F.3d 206, 211 (D.C. Cir. 1999).

ADDENDUM 2

"Interim Procedure for Patentees to Request a Recalculation of the Patent Term
Adjustment to Comply with the Federal Circuit Decision in *Wyeth v. Kappos*
Regarding the Overlapping Delay Provisions of 35 U.S.C. 154(b)(2)(A)"

countervailing duty proceedings at the Department.

This notice of initiation is being published in accordance with section 751(c) of the Act and 19 CFR 351.218 (c).

Dated: January 22, 2010.

**John M. Andersen,**

*Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations.*

[FR Doc. 2010–2083 Filed 1–20–10; 8:45 am]

**BILLING CODE 3510–DS–S**

---

## DEPARTMENT OF COMMERCE

### Patent and Trademark Office

[Docket No.: PTO–P–2010–0006]

**Interim Procedure for Patentees To Request a Recalculation of the Patent Term Adjustment To Comply With the Federal Circuit Decision in Wyeth v. Kappos Regarding the Overlapping Delay Provision of 35 U.S.C. 154(b)(2)(A)**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Notice.

**SUMMARY:** The United States Patent and Trademark Office (USPTO) is modifying the computer program it uses to calculate patent term adjustments in light of *Wyeth v. Kappos,* No. 2009–1120 (Fed. Cir., Jan. 7, 2010). The USPTO expects to complete this software modification by March 2, 2010. In the meantime, the USPTO is providing patentees with the ability to request a recalculation of their patent term adjustment without a fee as an alternative to the petition and fee required by 37 CFR 1.705(d). In order to qualify, a form requesting a recalculation of the patent term adjustment must be submitted no later than 180 days after the patent has issued and the patent must be issued prior to March 2, 2010. In addition, this procedure is only available for alleged errors that are specifically identified in *Wyeth.* The USPTO is deciding pending petitions under 37 CFR 1.705 in accordance with the *Wyeth* decision. This notice also provides information concerning the Patent Application Information Retrieval (PAIR) screen that displays the patent term adjustment calculation.

**DATES:** *Effective Date:* The procedure set forth in this notice is effective on February 1, 2010.

*Applicability Date:* The procedure set forth in this notice is applicable only to patents issued prior to March 2, 2010,

in which a request for recalculation of patent term adjustment in view of *Wyeth* is filed within 180 days of the day the patent was granted.

**FOR FURTHER INFORMATION CONTACT:** The Office of Patent Legal Administration by telephone at (571) 272–7702, or by mail addressed to: Mail Stop Comments-Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450.

**SUPPLEMENTARY INFORMATION:** Under 35 U.S.C. 154(b)(1), an applicant is entitled (subject to certain conditions and limitations) to patent term adjustment for the following reason: (1) If the USPTO fails to take certain actions during the examination and issue process within specified time frames (35 U.S.C. 154(b)(1)(A)), which are known as the "A" delays; (2) if the USPTO fails to issue a patent within three years of the actual filing date of the application (35 U.S.C. 154(b)(1)(B)), which are known as the "B" delays; and (3) for delays due to interference, secrecy order, or successful appellate review (35 U.S.C. 154(b)(1)(C)), which are known as the "C" delays. 35 U.S.C. 154(b)(2)(A) provides that "[t]o the extent that periods of delay attributable to grounds specified in [35 U.S.C. 154(b)(1)] overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed." The USPTO interpreted this provision as covering situations in which a delay by the USPTO contributes to multiple bases for adjustment (the "pre-*Wyeth*" interpretation of 35 U.S.C. 154(b)(2)(A)). *See Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office Interpretation of 35 U.S.C. 154(b)(2)(A),* 69 FR 34283 (June 21, 2004). The United States Court of Appeals for the Federal Circuit, however, recently held in *Wyeth* that the USPTO's interpretation of 35 U.S.C. 154(b)(2)(A) was too strict, and that periods of delay overlap under 35 U.S.C. 154(b)(2)(A) only if the periods which measure the amount of adjustment under 35 U.S.C. 154(b)(1) occur on the same calendar day.

The USPTO makes patent term adjustment determinations by a computer program that uses the information recorded in the USPTO's Patent Application Locating and Monitoring (PALM) system, except when an applicant requests reconsideration pursuant to 37 CFR 1.705. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR 56365, 56370, 56380–81 (Sept. 18, 2000) (final rule). The USPTO is in the process of revising the computer program it uses to

calculate patent term adjustment to calculate overlapping delays consistent with the Federal Circuit's interpretation of 35 U.S.C. 154(b)(2)(A) in *Wyeth.* The USPTO expects the revisions to the patent term adjustment computer program to be in place for use on the patents issuing on March 2, 2010.

Patentees should note that the patent term adjustment provisions of 35 U.S.C. 154(b) are complex, there are numerous types of communications that are exchanged between applicants and the USPTO during the patent application process, the PALM system was not originally designed for the purpose of calculating patent term adjustment as provided in 35 U.S.C. 154(b), and one or more of the time frames specified in of 35 U.S.C. 154(b)(1)(A) and (B) are not met presently in a high percentage of the patents. In addition, revisions to the patent term adjustment computer program necessary to calculate overlapping delays consistent with the Federal Circuit's interpretation of 35 U.S.C. 154(b)(2)(A) in *Wyeth* significantly increases the complexity of the patent term adjustment computer program. Thus, for patents issuing on or after March 2, 2010, a patentee who believes that the patent term adjustment calculation for his or her patent is not correct must file a request for reconsideration under 37 CFR 1.705(d) that complies with the requirements of 37 CFR 1.705(b)(1) and (b)(2) within two months of the date the patent issued. The USPTO is modifying and will continue to modify the patent term adjustment computer program as it becomes aware of situations in the patent term adjustment computer program where it is not correctly calculating the applicable patent term adjustment.

*Requests for Reconsideration of the Patent Term Adjustment indicated in the Patent:* 37 CFR 1.705(d) provides, in part, that any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and must comply with the requirements of 37 CFR 1.705(b)(1) and (b)(2). 35 U.S.C. 154(b)(4) provides that an applicant dissatisfied with a determination made by the Director under 35 U.S.C. 154(b)(3) shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.

The USPTO is providing an optional procedure under which patentees seeking a revised patent term adjustment in a patent issued prior to March 2, 2010, may request that the

*Exhibit F*

A41

USPTO recalculate the patent term adjustment without a request for reconsideration under 37 CFR 1.705(d) (or fee), provided that the patentee's sole basis for requesting reconsideration of the patent term adjustment in the patent is the USPTO's pre-*Wyeth* interpretation of 35 U.S.C. 154(b)(2)(A) and such a request is filed within 180 days of the day the patent was granted. The USPTO is providing a Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) for use in making such a request. The Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) is available on the USPTO Web site at *http:// www.uspto.gov/forms/index.jsp*. This procedure and Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) are applicable only for patents that issue prior to March 2, 2010. The USPTO will deny as untimely any request for recalculation of patent term adjustment indicated on a patent that is not filed within 180 days of the day the patent was granted. Patentees are reminded that this is an optional procedure, and that any patentee who wishes to preserve his or her right to review in the United States District Court for the District of Columbia of the USPTO's patent term adjustment determination must ensure that he or she also takes the steps required under 35 U.S.C. 154(b)(3) and (b)(4) and 37 CFR 1.705 in a timely manner.

The fee specified in 37 CFR 1.18(e) is required for a request for reconsideration under 37 CFR 1.705 (37 CFR 1.705(b)(1)), and the USPTO may only refund fees paid by mistake or in excess of that required (35 U.S.C. 42(d)). Therefore, the procedure set forth in this notice is not a basis for requesting a refund of the fee specified in 37 CFR 1.18(e) for any request for reconsideration under 37 CFR 1.705, including any previously filed request that was solely based on the USPTO's pre-*Wyeth* interpretation of 35 U.S.C. 154(b)(2)(A).

The procedure set forth in this notice and the Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) may not be used to request a reconsideration of the patent term adjustment indicated in the notice of allowance in an application that has not yet issued as a patent. If the application issues as a patent prior to March 2, 2010, the optional procedure set forth in this notice and the Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) may be used to request recalculation of the patent term

adjustment provided on the patent. It is expected that for applications issuing as patents on or after March 2, 2010, the patent term adjustment calculation will be consistent with the Federal Circuit's interpretation of 35 U.S.C. 154(b)(2)(A) in *Wyeth*.

The USPTO is deciding any currently pending request for reconsideration of the patent term adjustment indicated in the patent under 37 CFR 1.705(d) that was filed within two months of the date the patent issued consistent with the Federal Circuit's interpretation of 35 U.S.C. 154(b)(2)(A) in *Wyeth*. Patentees who received a decision on a request for reconsideration of the patent term adjustment indicated in the patent under 37 CFR 1.705(d) under the USPTO's pre-*Wyeth* interpretation of 35 U.S.C. 154(b)(2)(A) may file a request for reconsideration of that decision if such a request for reconsideration is filed within two months of the date of the decision on a request for reconsideration (37 CFR 1.181(f)). If the patentee's sole basis for requesting reconsideration of the decision is the USPTO's pre-*Wyeth* interpretation of 35 U.S.C. 154(b)(2)(A), the request for reconsideration need only state that reconsideration is being requested in view of the Federal Circuit's decision in *Wyeth* (the Request for Recalculation of Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) may also be used for this purpose).

Patentees seeking a revised patent term adjustment in a patent issued on or after March 2, 2010, must file a request for reconsideration under 37 CFR 1.705(d) that complies with the requirements of 37 CFR 1.705(b)(1) and (b)(2) within two months of the date the patent issued.

To the extent that the procedures adopted under the authority of 35 U.S.C. 2(b)(2) and 154(b)(3) require that any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and include the information required by 37 CFR 1.705(b)(2) and the fee required by 37 CFR 1.18(e), these requirements are hereby *sua sponte* waived for patents that meet all of the following criteria: (1) The patent must be issued prior to March 2, 2010; (2) the patentee's sole basis for requesting reconsideration of the patent term adjustment in the patent is the USPTO's pre-*Wyeth* interpretation of 35 U.S.C. 154(b)(2)(A); and (3) the Request for Recalculation of the Patent Term Adjustment in View of *Wyeth* form (PTO/SB/131) is filed within 180 days of the day the patent was granted. *See* 37 CFR 1.183. This waiver does not apply to patents issued on or after

March 2, 2010, to requests that the USPTO recalculate the patent term adjustment for alleged errors other than that identified in *Wyeth*, or to any request for reconsideration of the patent term adjustment indicated in the patent filed later than 180 days after the patent was granted.

*Paperwork Reduction Act:* This notice involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this notice is covered by OMB control number 0651–0020.

*Patent Term Adjustment Information Displayed in PAIR:* The USPTO provides a patent term adjustment calculation screen that is viewable through PAIR. The patent term adjustment screen has been displaying the following information at the right hand column: (1) USPTO delay days (the number of days of "A" and "C" delay); (2) Three Year Delay days (the number of days of "B" delay); (3) Applicant Delay days (the number of days by which the USPTO delay days will be reduced); and (4) the Total Patent Term Adjustment. Patentees who use the PAIR patent term adjustment calculation screen should note that it does not display the periods of delay which overlap and thus is not adequate for calculating the patent term under the Federal Circuit's interpretation of 35 U.S.C. 154(b)(2)(A) in *Wyeth*. The USPTO plans to revise this screen to show: (1) the number of days of "A" delay; (2) the number of days of "B" delay; (3) the number of days of "C" delay; (4) the number of days of "A" delay that overlap with a day of "B" delay plus the number of days of "A" delay that overlap with a day of "C" delay (the provisions of 35 U.S.C. 154(b)(1)(B)(ii) prevent a "B" delay period and "C" delay period from overlapping); (5) the number of days of non-overlapping USPTO delay; (6) the number of days of applicant delay; and (7) the total patent term adjustment. The revised PAIR patent term adjustment screen, however, will not be ready by March 2, 2010. The USPTO expects the revised PAIR patent term adjustment screen to be ready by July of 2010.

Nothing in this notice shall be construed as a waiver of the requirement of 35 U.S.C. 154(b)(4) that any civil action by an applicant dissatisfied with a determination made by the Director under 35 U.S.C. 154(b)(3) be filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.

Dated: January 26, 2010.

**David J. Kappos,**

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 2010–2041 Filed 1–29–10; 8:45 am]

BILLING CODE 3510–16–P

---

**DEPARTMENT OF COMMERCE**

**National Oceanic and Atmospheric Administration**

**RIN 0648–XS20**

**Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to Conducting Air-to-Surface Gunnery Missions in the Gulf of Mexico**

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice; issuance of an incidental harassment authorization.

**SUMMARY:** In accordance with the Marine Mammal Protection Act (MMPA) regulations, notification is hereby given that NMFS has issued an Incidental Harassment Authorization (IHA) to the U.S. Air Force (USAF), Eglin Air Force Base (Eglin AFB), to take marine mammals, by harassment, incidental to conducting air-to-surface (A-S) gunnery missions in the Gulf of Mexico (GOM). The USAF's activities are considered military readiness activities.

**DATES:** Effective January 27, 2010, through January 26, 2011.

**ADDRESSES:** A copy of the authorization, the application containing a list of the references used in this document, and NMFS' 2008 Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) may be obtained by writing to Michael Payne, Chief, Permits, Conservation and Education Division, Office of Protected Resources, National Marine Fisheries Service, 1315 East-West Highway, Silver Spring, MD 20910–3225, telephoning the contact listed below (see FOR FURTHER INFORMATION CONTACT), or visiting the internet at: *http://www.nmfs.noaa.gov/pr/permits/incidental.htm.* Documents cited in this notice may also be viewed, by appointment, during regular business hours, at the aforementioned address.

**FOR FURTHER INFORMATION CONTACT:** Candace Nachman, Office of Protected Resources, NMFS, (301) 713–2289, ext 156.

**SUPPLEMENTARY INFORMATION:**

**Background**

Sections 101(a)(5)(A) and (D) of the MMPA (16 U.S.C. 1361 *et seq.*) direct the Secretary of Commerce to allow, upon request, the incidental, but not intentional, taking of small numbers of marine mammals by U.S. citizens who engage in a specified activity (other than commercial fishing) within a specified geographical region if certain findings are made and either regulations are issued or, if the taking is limited to harassment, a notice of a proposed authorization is provided to the public for review.

Authorization for incidental takings shall be granted if NMFS finds that the taking will have a negligible impact on the species or stock(s), will not have an unmitigable adverse impact on the availability of the species or stock(s) for subsistence uses (where relevant), and if the permissible methods of taking and requirements pertaining to the mitigation, monitoring and reporting of such takings are set forth. NMFS has defined "negligible impact" in 50 CFR 216.103 as "...an impact resulting from the specified activity that cannot be reasonably expected to, and is not reasonably likely to, adversely affect the species or stock through effects on annual rates of recruitment or survival."

Section 101(a)(5)(D) of the MMPA established an expedited process by which citizens of the U.S. can apply for an authorization to incidentally take small numbers of marine mammals by harassment. Section 101(a)(5)(D) establishes a 45-day time limit for NMFS review of an application followed by a 30-day public notice and comment period on any proposed authorizations for the incidental harassment of marine mammals. Within 45 days of the close of the comment period, NMFS must either issue or deny the authorization.

The National Defense Authorization Act (NDAA) (Public Law 108–136) removed the "small numbers" and "specified geographical region" provisions and amended the definition of "harassment" as it applies to a "military readiness activity" to read as follows (Section 3(18)(B) of the MMPA):

(i) Any act that injures or has the significant potential to injure a marine mammal or marine mammal stock in the wild [Level A Harassment]; or (ii) Any act that disturbs or is likely to disturb a marine mammal or marine mammal stock in the wild by causing disruption of natural behavioral patterns, including, but not limited to, migration, surfacing, nursing, breeding, feeding, or sheltering, to a point where such behavioral patterns are abandoned or significantly altered [Level B Harassment].

**Summary of Request**

NMFS originally received an application on February 13, 2003, from Eglin AFB for the taking, by harassment, of marine mammals incidental to programmatic mission activities within the Eglin Gulf Test and Training Range (EGTTR). The EGTTR is described as the airspace over the GOM that is controlled by Eglin AFB. A notice of receipt of Eglin AFB's application and Notice of Proposed IHA and request for 30-day public comment published on January 23, 2006 (71 FR 3474). A 1-year IHA was subsequently issued to Eglin AFB for this activity on May 3, 2006 (71 FR 27695, May 12, 2006).

On January 29, 2007, NMFS received a request from Eglin AFB for a renewal of its IHA, which expired on May 2, 2007. This application addendum requested revisions to three components of the IHA requirements: protected species surveys; ramp-up procedures; and sea state restrictions. A Notice of Proposed IHA and request for 30-day public comment published on May 30, 2007 (72 FR 29974). A 1-year IHA was subsequently issued to Eglin AFB for this activity on December 11, 2008 (73 FR 78318, December 22, 2008).

On February 17, 2009, NMFS received a request from Eglin AFB for a renewal of its IHA, which expired on December 10, 2009. No modifications to the activity location, the mission activities, or the mitigation and monitoring measures required under the 2008–2009 IHA were requested by Eglin AFB. Therefore, these activities are identical to what has been described previously (73 FR 78318, December 22, 2008). A-S gunnery operations may potentially impact marine mammals at or near the water surface. Marine mammals could potentially be harassed, injured, or killed by exploding and non-exploding projectiles, and falling debris (USAF, 2002). However, based on analyses provided in the USAF's 2002 Final Programmatic EA (PEA), Eglin's Supplemental Information Request (2003), and NMFS' 2008 EA, as well as for reasons discussed in the Notice of Proposed IHA (74 FR 53474, October 19, 2009) and later in this document, NMFS concurs with Eglin AFB that gunnery exercises are not likely to result in any injury or mortality to marine mammals. Potential impacts resulting from A-S test operations include direct physical impacts (DPI) resulting from ordnance. Sixteen marine mammal species or stocks are authorized for taking by Level B harassment incidental to Eglin AFB's A-S activities and include: Bryde's whale (*Balaenoptera brydei*); sperm whale (*Physeter macrocephalus*); dwarf

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**ACTELION PHARMACEUTICALS, LTD. V. FOCARINO**
**2014-1086**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2014, true and correct copies of the foregoing

PRINCIPAL BRIEF FOR PLAINTIFF-APPELLANT ACTELION

PHARMACEUTICALS, LTD and supporting documents were caused to be served

on the below listed counsel of record via electronic mail and ECF:

Dana Kaersvang, Esq., Attorney
Department of Justice
Commercial Litigation Branch, Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Email: dana.l.kaersvang@usdoj.gov

Scott R. McIntosh,
Department of Justice
Appellate Staff, Civil Division
Room 7259
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Direct: 202-514-4052

Fax: 202-514-8151
Email: scott.mcintosh@usdoj.gov

Abby Christine Wright, Attorney
Department of Justice
Appellate Staff, Civil Division
Room 7252
950 Pennsylvania Avenue, N.W.

Washington, DC 20530
Direct: 202-514-0664
Fax: 202-514-8151
Email: Abby.Wright@usdoj.gov


Dated: January 13, 2014                    _/s/ Thomas Hoxie_____
                                           Thomas Hoxie
                                           Hoxie and Associates LLC
                                           75 Main St., Ste 203
                                           Millburn, NJ 07041
                                           Tel: (973) 912-5232
                                           Fax: (973) 912-5236
                                           Email: tom@hoxpat.com

                                           *Attorney for Plaintiff-Appellant*
                                           *Actelion Pharmaceuticals, Ltd.*

Form 19

FORM 19.  Certificate of Compliance With Rule 32(a)

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [    *7442*    ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                     *Microsoft Word 2010*                     ] in
[                     *Times New Roman, 14 pt.*                     ], or

☐    The brief has been prepared in a monospaced typeface using
[        *state name and version of word processing program*        ] with [
[        *state number of characters per inch and name of type style*        ].

_____
(Signature of Attorney)
Thomas Hoxie
_____
(Name of Attorney)
Appellant
_____
(State whether representing appellant, appellee, etc.)
January 13, 2013
_____
(Date)

Reset Fields